AUSA:   William Orr         Telephone: (989) 895-5712

AO 91 (Rev. 11/11)  Criminal Complaint          Special Agent:   Joshua Paczok         Telephone: (989) 892-6525

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
  v.

D1- Pascal Stitt
D2- Javier Castillo
D3- Heather Wilson

Case No.   1:25-mj-30525
Judge: Morris, Patricia T.
Filed: 08-18-2025

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 29, 2025 through August 14, 2025__ in the county of _____Saginaw_____ in the
_____Eastern_____ District of _____Michigan_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C § 846 and 841(a)(1) | Conspiracy to Deliver a Controlled Substance & Possession with intent to Deliver a Controlled Substance |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent, Joshua Paczok, FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: ____August 18, 2025____

_____
*Judge's signature*

City and state: __Bay City, Michigan__

Hon. Patricia T. Morris, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| IN THE MATTER OF PASCAL STITT, JAVIER CASTILLO and HEATHER WILSON | Case No. **Filed Under Seal** |
|---|---|

### AFFIDAVIT IN SUPPORT OF
### A CRIMINAL COMPLAINT

I, Joshua Paczok, being first duly sworn, hereby depose and state as follows:

### EXECUTIVE SUMMARY

The FBI Mid-Michigan Safe Streets Task Force intercepted communications between four individuals engaged in conspiring together to deliver controlled substances.

### INTRODUCTION AND BACKGROUND

1.     I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, I am authorized by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since March 2018. I am currently assigned to the Mid-Michigan Safe Streets Task Force ("MMSSTF"). As such, I investigate violent individuals and street gangs for various violations of federal law, including narcotics trafficking.

Prior to working on the MMSSTF, I was assigned to the Detroit FBI Violent Gang Task Force ("VGTF"). As a Special Agent on the VGTF, I investigated criminal street gangs for various violations of federal law, including narcotics trafficking, weapons offenses, violent crime, and fraud. Prior to becoming an FBI Special Agent, I was a United States Border Patrol Agent assigned to the Laredo North Station in Laredo, Texas. As a Border Patrol Agent, my responsibilities included identifying instances of human and narcotics trafficking that often-involved violent criminal organizations and drug trafficking organizations. Accordingly, I am familiar with the ways in which gangs and drug trafficking organizations and violent criminal organizations normally operate.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that Pascal Stitt, Javier Castillo and Heather Wilson have violated 21 U.S.C. §846 and 841(a)(1), "Conspiracy to Deliver a Controlled Substance" and "Possession with Intent to Deliver a Controlled Substance".

## PROBABLE CAUSE

5.     The FBI began an investigation into the drug trafficking activity of Elisabeth Cooney in March of 2024. From that time up through December of 2024, MMSSTF conducted at least 9 controlled buys of cocaine from Elisabeth Cooney, confirmed by field and/or laboratory testing. Since January 2025, multiple court orders have been signed in the United States District Court, Eastern District of Michigan, authorizing the interception of wire and/or electronic communications on phones known to be utilized by Elisabeth Cooney and others including but not limited to Keith Hayes Jr., Barry Siler, Levail Buriel, Malik Turner, and Willie Branch. Based on intercepted calls and corresponding surveillance, MMSSTF traced the supply of cocaine from Cooney up through multiple levels of distribution. Hayes was identified as a supplier of controlled substances. Siler was identified as a supplier of controlled substances for Hayes.[1]  Buriel was identified as a supplier of controlled substances for Siler and Castillo. Branch and Turner were identified as suppliers for Buriel.

6.     On June 23, 2025, Judge Thomas L. Ludington signed an order in the United States District Court for the Eastern District of Michigan authorizing the

---

[1] On August 5, 2025, pursuant to a federal search warrant, MMSSTF searched a residence associated with Hayes and located cocaine, confirmed by field testing.

interception of wire communications to and from (989) 482-8735 (utilized by Levail Buriel). On July 23, 2025, Judge Thomas L. Ludington signed an order in the United States District Court for the Eastern District of Michigan renewing the authorization for the interception of wire communications to and from (989) 482-8735. Pursuant to these and other orders, numerous communications concerning drug trafficking activity were intercepted, including many communications between Levail Buriel and his contacts. Some of these communications establish that there is a drug trafficking relationship between Levail Buriel, Javier Castillo, Heather Wilson, and Pascal Stitt. Specifically, it has been determined that Levail Buriel is a narcotics supplier to Javier Castillo and that Pascall Stitt is a co-conspirator with Levail Buriel. It has also been determined that Levail Buriel uses Heather Wilson as a driver, when he is transporting narcotics. The following is a non-exhaustive example of some of these communications, included for the limited purpose of establishing probable cause for the requested warrant.

7.   On July 29, 2025, at 2:30 p.m., Levail Buriel, using (989) 482-8735, received an incoming call from Javier Castillo, using (517) 928-4487. The following is a transcription of the pertinent portions of this intercepted call:

Buriel: Hello.

Castillo: Hey Unc, I think uh, uh, that, that um, I don't know how long it gonna to work that out right?

Buriel: Umm

Castillo: Do you, do you have like, do you have like, what he say?

Buriel: I, I, I, got him, I, I just was on the phone, he, he, he, he finna try umm get a nine or or an eight uh together so we swap, swap it out.

Castillo: Okay, umm, (UI)

Buriel: You, you know what I'm saying.

Castillo: What, what, what, what, what, what we, what we gon, what we gonna do about the rest? I mean the nine or eight gon hold me up but what are we going to do about da da rest? I don't wanna keep taking nothing out of it, that's why, that's why I said

Buriel: Right, I know what you, he, he, he, he, he said he said right now it, it, it's nothin you can do you know what I'm sayin? He said, um, um he had or somthin he was gon get that is, is a nine or or eight, I'm like

Castillo: he ain't got a, ain't got a half?

Buriel: Umm, no, no (UI)

Castillo: How, how, how, how long that's gonna take Unc?

Buriel: Uhh, I'm thinking, I'm thinking, I'm I'm waiting right now, I'm I'm hoping and thinking probably bout thirty, thirty, thirty minutes or something like that I believe.

Castillo: Ok ahh

Buriel: I'm, I'm working like a motherfucker for you bro. I don't want you to have (UI)

Castillo: Shh, shit, so (UI) figure out what the fuck I'm gonna do then? So what, I just gotta, I just gotta keep the rest of this shit or what?

Buriel: I'm, I'm, I'm hoping you don't have to, you know what I'm saying but you might end up havin to bro, and I hate that. I mean you know what I'm sayin, cause you know I don't mess around like that. I'm, I'm the best I can bro, just if I can get the whole hookup you know swapped out for ya bro.

Castillo: (UI) ain't that some shit huh ha ha, ain't that some shit.

Buriel: I hate it bro, I hate it bro.

Castillo: Yeah, I guess (UI)

Buriel: Soon as I get it you gettin it.

Based on my training, experience, and other intercepted calls around this time, I understand that in this call, Castillo was unhappy with the quality of the cocaine that he had received. Specifically, calls concerning this same transaction between Levail Buriel and one of his suppliers, Malik Turner, and between Malik Turner and his supplier, Alvarez Moultrie were intercepted. In those calls, multiple references to cocaine were made.[2] Thus, I understand in this call that when Castillo stated, "…what he say?" he was inquiring what Buriel's supplier said about an exchange of cocaine. Buriel replied that he was just on the phone with his supplier and that the supplier was attempting to get a nine or an eight together to be swapped out. I understand this to be eight or nine ounces of cocaine. Nine ounces is roughly one quarter kilogram. Castillo went on to ask what he's going to do about the rest,

---

[2] In at least one of those calls, Moultrie used the term "shake," which I know based on my training and experience to be a term used to described lower quality cocaine. "Shake" refers to fine powder cocaine that may have been mixed with other substances. He also referred to  a "chunk" and "chunks". I know, from my training and experience that "chunks" as  opposed to "shake" are large pieces of cocaine, broken directly off of a kilogram brick of cocaine and therefore considered to be of a higher quality.

implying that he had purchased more than the amount the supplier was willing to exchange. Buriel reiterated that the supplier was only able to change out an eight or a nine. Castillo asked, "He ain't got a, ain't got a half?" I understand this to be a half a kilogram of cocaine. Buriel said that he did not.

8.    On August 12, 2025, at approximately 2:40 p.m., Buriel, using (989) 482-8735, made an outgoing call to Stitt, using (989) 332-3888. Below is a transcription of the pertinent portion of the conversation:

Stitt: (UI)

Buriel: Hey what up unc.

Stitt: What's up bro?

Buriel: Oh you're at home huh?

Stitt: Mm-hmm.

Buriel: Oh okay. That won't be enough to ride man.

Stitt: Want me to call you as soon as I get my ass up?

Buriel: Okay. Okay

Stitt: Okay.

Buriel: Alright.

Based on my training and experience, and intercepted calls, it is my belief Buriel contacted Stitt to see if they had additional controlled substances that Buriel could provide to the Unknown Male that had just contacted him. Approximately two

minutes prior, the unknown male using (989) 577-9698 requested to "get two." Stitt

indicated he would call Buriel back.

9.     At 2:41 p.m., Buriel, using (989) 482-8735, made an outgoing call to

the Unknown Male, using (989) 577-9698. Below is the pertinent portion of the

conversation:

Buriel: Hello.

UM: Hello.

Buriel: Yeah he's, he's headed to Birch Run and he said he was going to hit
me when he get back but I can do one right now, so.

UM: Alright. Well I'll just come grab that and come back for the other.
Alright.

Buriel: Okay, alright.

Based on my training and experience, intercepted calls, Buriel called the Unknown

Male back after he had contacted his supplier to let the Unknown Male know the

status of the controlled substances. Buriel indicated that his supplier was not ready

but was waiting on a call back from him. Buriel then stated that he did have the

controlled substances the Unknown Male originally requested ready and would get

the additional controlled substances to him another time.

10.     On August 12, 2025, at approximately 3:45 p.m., Buriel, using (989)

482-8735, received an incoming call from Stitt, using (989) 332-3888. Below is the

pertinent portion of the conversation:

Buriel: What up unc?

Stitt: What you doing?

Buriel: Just chillin.

Stitt: (UI)

Buriel: Just, a little pissed off (UI)

Stitt: Why what happened?

Buriel: I'll tell you when I see you.

Stitt: Uh, where you at? At home?

Buriel: Yeah.

Stitt: You by yourself?

Buriel: I got her with me. (UI) with you.

Stitt: Nah, uh, uh, uh, In the morning. Alright.

Buriel: Huh?

Stitt: Yeah, just, yeah whenever you get free, just call me.

Buriel: Okay because I got, I got the white chick with the, um.

Stitt: Okay, yeah that ain't, yeah, um.

Buriel: Yeah. I just going to pull off.

Stitt: Yup, yup, (UI), yup, yup. Where you at? At my, where you at? My house?

Buriel: Uh-uh, no, where, you know, when she leave, I'm. I'm call you back.

Stitt: Okay, okay.

9

Buriel: Alright bet.

Based on my training and experience, intercepted calls, I understand that Stitt called to talk with Buriel concerning controlled substances but did not want to do it with other individuals around. Buriel began to talk about Heather Wilson, "white chick," but then stopped talking, likely because he did not want to talk about the illegal activity she was doing for them on the phone. They both then agreed to wait and talk later once no one else was around.

11.   At 5:07 p.m., Buriel, using (989) 482-8735, made an outgoing call to Stitt, using (989) 332-3888. Below is a transcription of the pertinent portion of the conversation:

Stitt: Hello. Hello.

Buriel: Hey, what up, what up bro.

Stitt: What up foo.

Buriel: Man tellin man, need, need, need talk to ya.

Stitt: Ok. Where you which you want me to do pull up or you wanna pull up.

Buriel: Uh shit hell. Yeah you can pull up if, if, if you ain't far.

Stitt: Nah I'm at home.

Buriel: Oh ok shit, that's good. Or you or you want me to pull up?

Stitt: It's up to you bro, you can pull up.

Buriel: Ok cool I I be coming around the corner.

Stitt: Yep.

Buriel: Alright.

Based on my training and experience, intercepted calls, it is my understanding that Buriel contacted Stitt to discuss the distribution of controlled substances but did not want to talk on the phone. They then arranged to meet a Stitt's residence to discuss controlled substances.

12.    On August 14, 2025, at approximately 12:25 p.m., Levail Buriel, using (989) 482-8735, received an incoming call from Pascal Stitt, using (989) 332-3888. The following is a transcription of the pertinent portions of this intercepted call:

Buriel: What up bro.

Stitt: Um (coughs several times) get yo home girl (UI) man call yo home girl see what she up to man (coughs).

Buriel: Okay, I'm on my way.

Stitt: Nah, nah just call her then let me know (UI) how much time you gone be then I let you know how much time we need, bro when they say the truck gon be done.

Buriel: I don't know, they startin on it they gon look at it today.

Stitt: Oh okay. I try to, I keep tryna get the, the girl to get the fuckin uh rental bro but every time they gotta go to fuckin work in the morning and bout time they get off the mothafucka be closed man.

Buriel: Damn.

Stitt: (UI) like shiit. Uh yeah go and call her and see what she says bro (UI) then call me back.

11

Buriel: Alright.

Based on my experience, knowledge of this investigation and particularly the context of other intercepted calls, I understand that in this call, Pascal Stitt called Levail Buriel to tell him to call Heather Wilson ("yo home girl") to see if she would be available that day. Based on the context of other intercepted calls, I know that the truck that they were referring to was Levail Buriel's truck, which was in the shop. Based on intercepted calls where they discussed it, I know Buriel had previously allowed Stitt to borrow this truck. I also know based on other intercepted calls, in conjunction with physical surveillance, that Levail Buriel had Heather Wilson rent a vehicle, which Stitt was driving. In a later call from August 12, Levail referred to this rented vehicle when talking to Stitt. During physical surveillance, MMSSTF also observed this vehicle located at a house where Levail Buriel was meeting with Pascal Stitt.

13.    At approximately 12:28 p.m., Levail Buriel received an incoming call from Heather Wilson, using (989) 443-4612. The following is a transcription of the pertinent portions of this intercepted call:

Buriel: Hello.

Wilson: (UI) hello

Buriel: Yeah I forgot it's supposed to go back today huh.

Wilson: Uh, yeah.

Buriel: Oh (UI) um (UI) Michigan tags, or just say fuck it and extend it.

Wilson: I feel like we should just extend it because I was thinking about it.  They probably don't got Michigan tags here.  They might in Bay City, but they only got a, it's just will probably so much to have to try to do all that.  You know what I'm sayin?  I'd rather just go pay it and just, you know what I mean?

Buriel: Right, ok.  Yeah we'll just extend it fuck that.  Um, I need a ride again.

Wilson: You need a ride again?

Buriel: Yup.

Wilson: When?

Buriel: Um, prolly as soon as you can give me a ride.

Wilson: Ok.  Alright I'm a get up.

Buriel: (UI) sorry to (UI) like you know.

Wilson: Yeah it's ok.  I'm just gonna get up. Throw some clothes on.

Buriel: Ok.

Wilson: I'll see you in a minute (UI) Alright.

Based on my training, experience, knowledge of this investigation and especially the context of other intercepted calls, I understand that in this call, Levail Buriel asked Heather Wilson to come and give him a ride. When Buriel said "it's supposed to go back today," he was referring to the rental car that Wilson had rented on his behalf. Based on other intercepted calls, I know that Buriel previously expressed

13

dissatisfaction with the vehicle because it had Illinois license plates rather than Michigan plates. Based on my training and experience, I understand that drug traffickers prefer not having out of state license plates, because local license plates blend in better and are less likely to draw the attention of law enforcement, which could result in a traffic stop. In this call, they decided to continue to use the rental vehicle that Heather Wilson had rented anyway. Based on physical surveillance, I know that the vehicle they were referring to was a maroon Nissan Sentra bearing Illinois license plate 265380.

14.     At approximately 12:29 p.m., Levail Buriel, using (989) 482-8735, made an outgoing call to Pascal Stitt, who was using (989) 332-3888. The following is a transcription of the pertinent portions of this intercepted call:

> Stitt: Yup.
>
> Buriel: She getting up, putting her clothes on right now.
>
> Stitt: Alright.  Let me um, cause it still might not be until, uh, like 2:00. I just want to make sure everything was , uh, up and going, uh.
>
> Buriel: Damn. (UI)
>
> Stitt: Uh cause you say, I don't know I guess she should've had to get some fuckin charcoal and shit at the house, so.
>
> Buriel: Ok.
>
> Stitt: Uh, I ain's for show, but that's what I'm thinking so. I just wanna make sure you know, everything, you know, she (UI) you all coming over.

14

> Buriel: Yeah so, so I can just have her hold on till 2:00 then right?
>
> Stitt: Yeah yeah at least 1:30. For show.
>
> Buriel: Ok.
>
> Stitt: Alright.
>
> Buriel: Alright.

Based on my experience, knowledge of this investigation and the context of other intercepted calls, I understand that in this call, Levail Buriel relayed part of what Heather Wilson had just told him, that she was getting up and putting her clothes on. Pascal Stitt went on to tell Levail Buriel that he wanted to make sure that Buriel and Wilson would be ready to go by 1:30 or 2:00 p.m.  ("I just want to make sure everything was, uh, up and going."). Buriel then confirmed that Stitt wanted Wilson to be on hold until 2. The two agreed that they would be ready by 1:30 p.m.

15.    At approximately 12:30 p.m., Levail Buriel, using (989) 482-8735, made an outgoing call to Heather Wilson, who was using (989) 443-4612. The following is a transcription of the pertinent portions of this intercepted call:

> Wilson: Hello.
>
> Buriel: Hey not, not yet.  You can just um, you can just call me at 1:30.
>
> Wilson: Ok.
>
> Buriel: Ok.
>
> Wilson: Alright.  Call you at 1:30?

Buriel: Yeah.

Wilson: Alright alright .

Buriel: Alright cool.

Wilson: Bye.

Based on my experience, knowledge of this investigation, and particularly the context of other intercepted calls, I understand that in this call, Levail Buriel relayed to Heather Wilson, what he had just discussed with Pascal Stitt, namely that they were not ready yet, but that she should call Buriel at 1:30 to see if they were ready at that time.

16.   At approximately 1:32 p.m., as instructed, Heather Wilson, using (989) 443-4612, made a call to Levail Buriel, using (989) 482-8735. The following is a transcription of this intercepted call:

Buriel: Hey.

Wilson: What's going on?

Buriel: Um nothing.  I'm gonna um, I'm gonna call him and see if he ready and I'll, I'll call you back and let you know (UI) um that you can come or what.

Wilson: Alright.

Buriel: Ok?

Wilson: Alright .

Buriel: That cool?

Wilson: Um hum.

Buriel: (UI) Alright (UI)

Based on my experience, knowledge of this investigation, and the context of other intercepted calls, I understand that in this call, Heather Wilson called Levail Buriel as she was instructed to do, in order to find out if Buriel and Stitt needed her driving services. Buriel told her that he would call Stitt ("him") and find out.

17.    At approximately 1:52 p.m., Levail Buriel, using (989) 482-8735, made an outgoing call to Pascal Stitt, who was using (989) 332-3888. The following is a transcription of the pertinent portions of this intercepted call:

Stitt: Yello.

Buriel: What's the dealo.

Stitt: Yep I'm calling there in a minute.

Buriel: Alright.

Stitt: Alright.

Buriel: Yup.

Based on my training, experience, knowledge of this investigation, and especially the context of other intercepted calls, I understand that in this call Levail Buriel called Pascall Stitt to find out whether or not he was ready to meet as previously discussed. Stitt informed Buriel that Stitt would be calling there in a minute.

18.    At approximately 2:08p.m., Levail Buriel, using (989) 482-8735, made an outgoing call to Heather Wilson, who was using (989) 443-4612. The following is a transcription of the pertinent portions of this intercepted call:

> Wilson: Yeah.
>
> Buriel: Hey.
>
> Wilson: Yeah.
>
> Buriel: Can you come and pick me up from the uh, the bar, uh um uh um Sportspage.
> Wilson: Yeah can you give me like ten minutes?
>
> Buriel: Um yes all day long.
>
> Wilson: Alright cause I just, just got in to wash my hair but I'm getting out so
>
> Buriel: That's good no problem you ain't gotta bust ya butt.
>
> Wilson: Alright, okay.
>
> Buriel: Alright cool.
>
> Wilson: Alright.
>
> Buriel: Alright.

Based on my experience, knowledge of this investigation, and the context of other intercepted calls, I understand that in this call Levail Buriel asked Heather Wilson to pick him up from Sportspage, a bar located near Buriel's house. Wilson asked Buriel is she could be there in approximately 10 minutes. The two agreed to these arrangements.

19.     At approximately 2:16 p.m., the FBI MMSSTF observed Buriel leave his residence in a black Buick Grand National. The Grand National parked in a garage bay between Sportspage and Larkins Painters. Buriel exited the vehicle and sat on the back stair behind Sportspage.

20.     At approximately 2:39 p.m., Levail Buriel, using (989) 482-8735, received an incoming call from Javier Castillo, who was using (989) 245-5266. The following is a transcription of the pertinent portions of this intercepted call:

> Buriel: Hello
>
> Castillo: Hey hey, hey Unc.
>
> Buriel: Huh?
>
> Castillo: (UI) hey you know just because you don't got no car (UI)
>
> Buriel: No no no no no no no no no, don't do me like that.  I'm I'm I'm I'm I'm I'm going to grab him, I'm going to grab him right now as we speak.  And and and (UI) and I'll be huh?
>
> Castillo: We over here (UI) I'm like oh you piece of shit.  (UI) piece of shit.
>
> Buriel: I'm on my way to grab it right now and should be like like like 20-30 minutes.
>
> Castillo: Alright Unc (UI) truck
>
> Buriel: Ok (UI) ok.
>
> Castillo: Alright.
>
> Buriel: Alright bet, yup

Based on my training, experience, knowledge of this investigation, the context of other intercepted calls, and the established drug trafficking relationship between Levail Buriel and Javier Castillo, I understand that in this call, Javier Castillo called to be re-supplied with cocaine. Castillo requested that Buriel bring the narcotics to him. Levail Buriel replied that he was going to grab the cocaine ("it") right now and that he would be there in about 20-30 minutes.

21.     At approximately 2:42 p.m., Levail Buriel, using (989) 482-8735, made an outgoing call to Heather Wilson, who was using (989) 443-4612. The following is a transcription of the pertinent portions of this intercepted call:

> Wilson: Hey I'm on my way.
>
> Buriel: Ok bet
>
> Wilson: Alright.
>
> Buriel: Alright

Based on the context of other intercepted calls, I understand that in this call, Heather Wilson told Levail Buriel that she was on her way to pick him up.

22.     At approximately 2:45 p.m., a black Cadillac Escalade bearing Michigan License plate EYN 2339 arrived on Fayette Avenue, beside Sportspage. Levail Buriel got into the Escalade and the Escalade departed westbound on Fayette Avenue. MMSSTF maintained surveillance on the Escalade as it travelled to Levail Buriel's house, located at 1920 Kollen, Saginaw. At approximately 2:53 p.m., the

Escalade departed from Buriel's house. MMSSTF maintained surveillance on the Escalade as it travelled from Buriel's house to 2201 McGill, Saginaw. The Escalade parked along the curb beside 2201 McGill, Saginaw. Levail Buriel exited the Escalade and went into 2201 McGill. At approximately 3:09 p.m., the Escalade departed southbound on Veterans Parkway.

23.     At approximately 3:11 p.m., Levail Buriel, using (989) 482-8735, made an outgoing call to Pascal Stitt, who was using (989) 332-3888. The following is a transcription of this intercepted call:

> Stitt: Next time don't pull in front of her house.  Always pull in our driveway (UI) don't pull (UI) front (UI) alright.
>
> Buriel: No problem.
>
> Stitt: Alright.
>
> Buriel: Cool.
>
> Stitt: Alright, yep

Based upon my knowledge of this investigation and corresponding surveillance, I understand in this call, Pascal Stitt instructed Levail Buriel not to pull up along the curb at 2201 McGill, but rather to park in the driveway. Based on my experience, I believe that this is likely because vehicles parked on the street are more conspicuous and easier to see from Veteran's parkway, which is perpendicular to McGill and thus more easily spotted by law enforcement surveillance. GPS location data pertaining to (989) 332-3888 indicated that this cellular phone was located in the vicinity of

2201 McGill at the time that Levail Buriel and Heather Wilson stopped there. Thus, it is reasonable to conclude that Buriel had gone there to meet with Stitt. Based on my training and experience, the short amount of time Buriel stayed at the house on McGill was consistent with a short-stay interaction typical of drug trafficking activity.

24.     At approximately 3:12 p.m., Levail Buriel, using (989) 482-8735, made an outgoing call to Javier Castillo, using (989) 245-5266. The following is a transcription of the pertinent portions of this intercepted call:

> Castillo: I know right, yea Unc yeah Unc we're outside.  We're at my pop's house.
>
> Buriel: (UI) I'm just pullin up (UI)
>
> Castillo: Yup, yup.
>
> Buriel: Alright cool.

Based on my experience, knowledge of this investigation and especially the context of other intercepted calls and corresponding surveillance, I understand that in this call Javier Castillo told Levail Buriel that they were outside his father's ("pop's") house. Levail replied that he was just pulling up.

25.     The MMSSTF maintained surveillance as the Escalade travelled from 2201 McGill to the driveway of 2614 Sheridan, Saginaw. At approximately 3:19 p.m., the Escalade parked in the driveway of 2614 Sheridan. I observed Levail Buriel exited the vehicle from the passenger side and walked up the driveway of

2616 Sheridan, which is Javier Castillo's house. I also observed a woman, whose appearance was consistent with Heather Wilson, in the driver's seat.

26.     At approximately 3:23 p.m., Levail Buriel, using (989) 482-8735, made an outgoing call to Javier Castillo, who was using (989) 245-5266. The following is a transcription of the pertinent portions of this intercepted call:

> Buriel: Hello.

> Castillo: (UI) I'm in the house. (UI) come in man.

Based on my knowledge of this investigation, particularly the context of other intercepted calls, and corresponding surveillance, I understand that in this call, Levail Buriel called to tell Javier Castillo that he was there. Castillo subsequently invited him inside.

27.     At approximately 3:31 p.m., the MMSSTF observed Levail Buriel returning to the front passenger seat of the Escalade. The Escalade departed northbound on Sheridan. The MMSSTF maintained surveillance as the Escalade travelled back to Levail Buriel's house at 1920 Kollen, Saginaw.

28.     At approximately 4:06 p.m., MMSSTF observed the black Cadillac Escalade depart from 1920 Kollen and travel Westbound on Gratiot. MMSSTF observed there was only a driver in the car. The MMSSTF maintained surveillance on the Escalade as it travelled from 1920 Kollen to a drive through ATM machine at Team One bank located at 8450 Gratiot Road. The Escalade arrived at the drive

through ATM at approximately 4:16 p.m. The MMSSTF continued to maintain surveillance after the Escalade departed.

29.     At approximately 4:20 p.m., Levail Buriel, using (989) 482-8735, made an outgoing call to Pascal Stitt, using (989) 332-3888. The following is a transcription of the pertinent portions of this intercepted call:

> Stitt: Yeah.
>
> Buriel: Hey man.
>
> Stitt: Yo.
>
> Buriel: Why you rushing me and busting my balls like that.
>
> Stitt: Uhh, umm, I'll tell you in person.
>
> Buriel: Oh, ok, ok, you god dang it. I'm waiting on she just ran to the ATM. She dropped me off at home, so she, she going to be pulling right back up. Then I'm heading to you.
>
> Stitt: Alright, ok.
>
> Buriel: Yup, damn give me a break bro.
>
> Stitt: Hell when you get in (UI).
>
> Buriel: I'm already (UI) shit that ain't going to do shit. I'm (UI) fucked up and frustrated about this punk ass mother fucking truck. Man, I got to take it from Cadillac to down there to fucking um, Garber Buick. Cause that's where I bought it from and hopefully my fucking warranty, which I know it is. You know what I'm saying. I'm just keeping my fingers crossed and they going to have to build, build me a new fucking motor. I don't want the bitch after they build that mother fucker motor. I'm trading that piece of shit in and getting me something different. I'm not fucking around no more.

Stitt: (UI) that's what I thought (UI) shit that's why dog traded his in.

Buriel: I'm quite sure.

Stitt: That's what he said that day I thought.

Buriel: Yup exactly, they are pieces of shit. (UI) running good technology mother fuckers but they are pieces of fucking shit. I'm done, I'm tired and now my mommas grass. I can't cut no grass. I'm loosing money.

Stitt: How long do you think it will take to do that?
Buriel: Bro, I don't know man. I'm thinking I'm probably be out damn near probably three, three months or something. I'm thinking man so.

Stitt: I don't take that damn long to do it.

Buriel: I don't know bro. I'm I'm this is what I'm counting this is what, cause I don't want to be disappointed so I'm I'm leaving it that long. And I um I paid her for a week for your vehicle.

Stitt: MMhu.

Buriel: So we got it for a week.

Stitt: The same one.

Buriel: That same joker yeah.

Stitt: Damn.

Buriel: We didn't want to do going taking it in and then starting over and costing us more.

Stitt: Oh, ok.

Buriel: When we out of 300 dollars. You know what I'm saying? Can't be.

Stitt: Ok yeah.

Buriel: So, I just paid her. She running to the ATM. I'm umm credit union put the stuff back in there, because it came off her card. I just paid her (UI) go ahead.

Stitt: Soon as I get. As soon as I get my check on the first I'll take care of you.

Buriel: It's no problem man. Ok (UI) wanted to get on you about you busting my butt about hurrying up and getting over there.

Stitt: Hell, yeah shit. I shit. Hell yeah, I hey hey I'll tell you when you get here though.

Buriel: I know you want bad ass kids away from you. I'm coming to pick there ass up.

Stitt: Hell, yeah. I'm tired of these motherfuckers shit.

Buriel: I'm finna come and get them god damn grand daddy.

Stitt: Alright.

Buriel: Alright.

Based on my training, experience, knowledge of this investigation; particularly the context of other intercepted calls and corresponding surveillance, I understand that in this call, Stitt wanted Buriel to come back to his location, 2201 McGill Street, quickly, but did not want to talk on the phone concerning why. I believe this is because it was concerning the cocaine that they were in the process of distributing. Buriel then indicated that as soon as Wilson came back to his residence they would be travelling to Stitt. They then went on to talk about Buriel's truck. I know from previous intercepted calls that the truck to which they were referring had broken

down when Stitt was driving it. They also talked about getting it fixed. They also talked about paying Wilson for the vehicle that she rented for them, which they were using in furtherance of disturbing controlled substances. The conversation went back to Buriel and Stitt meeting up. The two discussed Buriel going to pick up more cocaine from Stitt, "kids."  Stitt did not want the cocaine with him anymore because he did not want to be caught with it. I know that "kids" in this context was a coded reference to cocaine, because during all of our surveillance on August 12, 2025, and especially in Levail's two meetings with Pascal at 2201 McGill, we never saw Levail Buriel with any actual children. He arrived and departed from his meetings with Stitt accompanied only by Heather Wilson. Further, in a subsequent communication between Pascall Stitt and Levail Buriel from August 15, 2025, Buriel and Stitt refer to "kids" in the context of other contemporaneous intercepted calls between Buriel and one of Buriel's drug customers. Specifically, Buriel called Stitt on behalf of this customer and asked if Stitt had "kids still over there". Stitt replied in the affirmative and Buriel immediately relayed to the customer that "he said yeah."

30.     At approximately 4:24 p.m., Levail Buriel, using (989) 482-8735, made an outgoing call to Heather Wilson, using (989) 443-4612. The following is a transcription of the pertinent portions of this intercepted call:

Wilson: Hello.

Buriel: Ok, cool. I just need you back here.

27

Wilson: I'm coming down Gratiot.

Buriel: Ok, I don't want to wrestle with you now.

Wilson: Huh.

Buriel: I said I don't want to jump on you and wrestle with you. I'm being nice.

Wilson: You sure don't your good.

Buriel: (UI).

Wilson: I'll be there a couple. Well about five minutes.

Buriel: Ok.

Wilson: Alright.

Buriel: Alright.

Based on my training, experience, and the context of other intercepted calls, I understand that in this call Buriel contacted Wilson because he needed her to drive him to pick up controlled substances from Stitt. Wilson stated she would be at his residence in 5 minutes.

31.     At approximately 4:28 p.m., MMSSTF observed the black Cadillac Escalade return to 1920 Kollen. It departed about one minute later. MMSSTF observed Levail Buriel in the passenger seat. The MMSSTF maintained surveillance on the black Cadillac Escalade as it travelled to 2201 McGill, Saginaw. At approximately 4:41 p.m., the Escalade arrived at 2201 McGill. The Escalade parked

in the driveway as Pascall Stitt had earlier instructed Levail Buriel to do. The Maroon Nissan Sentra with Illinois plates was also located in the driveway of 2201 McGill.

32.     At approximately 4:51 p.m., Levail Buriel, using (989) 482-8735, received an incoming call from Javier Castillo, using (989) 245-5266. The following is a transcription of the pertinent portions of this intercepted call:

> Buriel: What up bro?
>
> Castillo: (UI) what up unc. (UI) I'd say that was that on time.
>
> Buriel: (UI).
>
> Castillo: (UI) I said was was that clock on time or no.
>
> Buriel: Are on your end?
>
> Castillo: Yeah.
>
> Buriel: Yeah.
>
> Castillo: Right.
>
> Buriel: Yeah, we said right then and there.
>
> Castillo: K, yeah, yeah I just I just thinking about the other I don't know I. That other one I don't know if it's under. You have a chance to look at it yet or no.
>
> Buriel: I'm, I'm, I'm gonna go over it. I'm gonna go over it again. What you missing something or.
>
> Castillo: Yup, I was missing like one. I don't know if fuck I left it the bitch somewhere. (UI) you know what I mean?
>
> Buriel: We set it right there. We set it right there, man.

29

Castillo: Yeah, I just I just just that just that one that one I think I don't know if it's four or something more than four in there.

Buriel: Oh, you.

Castillo: The other one.

Buriel: You talking about that fat one?  You talking about that fat one?

Castillo: Yup, yup.

Buriel: Ok, I I I'll make sure and I'll let you know.

Castillo: Yeah, I know you got me I ain't trippin.

Buriel: Yes, sir. Um, hey hey hey hey.

Castillo: Hu.

Buriel: Whatch whatch you think about it?

Castillo: Man, it's alright. It look different but cool. I ain't, I ain't, I ain't, I ain't, I ain't take the kids swimming yet. But, I'll let you know how that comes out

Buriel: Alright, cool no problem.

Castillo: Alright, man.

Buriel: I know you always an expert.

Based on my training, experience, other intercepted calls and corresponding surveillance, I understand that in this call, Castillo contacted Buriel because the cocaine Buriel had just delivered to Castillo was not weighing up correctly. I have learned that drug traffickers will often refer to the digital scales that they use to weigh out their products as "clocks" especially when communicating on the phone. Castillo

30

was first concerned that the scale that they used to weigh it was not accurate. Buriel assured him it was and that they were all at Castillo's residence together when they weighed it and it was correct. They then talked about the different packages of cocaine that Buriel had supplied and what they contained. Buriel then asked what Castillo thought about the quality of the cocaine. Castillo stated that it looked different, but he had not yet cooked it to crack cocaine to see what the quality actually was, "take the kids swimming." Based on my training, and experience with drug trafficking investigations, I know that powder cocaine is cooked into crack cocaine by heating a mixture of water, cocaine powder, and baking soda. Thus, I understand that drug deals will frequently make water references when talking about the process of cooking cocaine into crack cocaine. Also, as described in paragraph 30, Buriel commonly referred to cocaine as kids in communications with drug customers and suppliers.

33.    At approximately 4:55p.m., MMSSTF observed Levail Buriel leave 2201 McGill from the front door and return to the Escalade. The Escalade departed. The MMSSTF maintained surveillance on the Escalade as it travelled back to 1920 Kollen. The Escalade arrived at 1920 Kollen at approximately 5:20 p.m.

34.    Pascal Stitt was determined to be the user of (989) 332-3888 based upon content of intercepted calls. The user of the phone indicated that his birthday was on August 3rd, which matches Stitt's birthday. Additionally, the user of (989) 332-3888

used 1021 Superior Street, Saginaw as the address of a broken down vehicle in his possession. Stitt provided the same address as a parole address on June 25, 2025.

35.     Levail Buriel is the known to be the user of (989) 482-8735, based on physical surveillance and corresponding intercepting calls. For example, he was seen during surveillance on August 12, 2025 with his phone to his ear, at the same time as calls from this phone number were being intercepted. He was also seen meeting with Heather Wilson near the Sportspage bar after using this phone number to coordinate the meeting.

36.     Heather Wilson was determined to be the user of (989) 443-4612 based upon content of intercepted calls and surveillance. The user of the phone's name is "Heather," and the user of the phone indicated that her birthday was on July 11th, which matches Wilson's birthday. Additionally, the user of (989) 443-4612 stated that they were on "Greenwich" on numerous occasions. Wilson's registered address is 1013 Greenwich Street, Saginaw, Michigan. Surveillance conducted in conjunction with intercepted calls of (989) 443-4612 on August 14, 2025, identified an individual matching her physical description as the user of (989) 443-4612.

37.     Javier Castillo was determined to be the user of (517) 928-4487 and (989) 245-5266 based upon content of intercepted calls and surveillance. For example, both phone numbers frequently have Buriel meet them at 2616 Sheridan Avenue, Saginaw, MI, which according to Saginaw County records is owned by

Javier Castillo. On August 5, 2025, the user of (989) 245-5266 told Buriel to meet him at his house and MMSSTF observed Buriel arrive at 2616 Sheridan Avenue and meeting with Javier Castillo.  Additionally, the users' voices match between (517) 928-4487 and (989) 245-5266 further establishing they are the same user.

38.    Based on the foregoing, there is probable cause to believe that Pascal Stitt, Heather Wilson, and Javier Castillo conspired and agreed with each other and with Levail Buriel, and others known and unknown, to possess with intent to distribute and to distribute cocaine in violation of Title 21 U.S.C. § 841(a)(1) and 21 U.S.C § 846.

Respectfully submitted,

Joshua Paczok
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my
presence and/or by reliable electronic means.

Hon. Patricia T. Morris
UNITED STATES MAGISTRATE JUDGE

Dated:  August 18, 2025